DECISION AND JUDGMENT ENTRY
Appellant Samantha Fisher appeals from a judgment of the circleville Municipal Court finding her guilty of menacing, in violation of R.C. 2903.22, a fourth degree misdemeanor.
We reverse.
Appellant raises three assignments of error:
 I. THE TRIAL COURT ERRED IN DISREGARDING DEFENDANT'S CLEAR STATUTORY LICENSE TO DISCHARGE HER FIREARM IN AN ATTEMPT TO KILL OR DRIVE OFF THE INTRUDING DOG KNOWN BY HER TO BE VICIOUS WHICH WAS MENACING HER CHILDREN AND PROPERTY.
 II. THE TRIAL COURT ERRED IN DETERMING [sic] THAT THE ONLY ELEMENTS REQUIRED FOR A CULPABLE VIOLATION OF SECTION 2903.22 OHIO REVISED CODE ARE (1) PURPOSEFULLY OR KNOWINGLY DISCHARGING A FIREARM AND (2) RESULTING FEAR IN ANOTHER, WITHOUT REQUIRING PROOF OF ANY CULPABLE INTENT TO CAUSE THE FEAR.
 III. THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY IN THAT THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.
 STATEMENT OF THE CASE
Appellant lives with her husband and children in rural Pickaway County, near Ashville, Ohio. Her neighbor had several dogs, one of which, a German Shepherd named Joe, precipitated the events of January 3, 1998, that led to the menacing charge against the appellant.
Testimony from the appellant's husband, the local mail carrier, and even the owner's child established that Joe was prone to attack people or other dogs. Jay Fisher, appellant's husband, testified that the dog had bitten him on the foot two years before this incident and attacked his dogs on two occasions, in January 1997, and again in May 1997. After one of the attacks, his dog required medical treatment. He testified that after the May incident they had not had any further attacks by Joe until January 1998.
The mail carrier testified that Joe tried to bite her on her arm. After that attack, the local postmaster would not allow the carriers to deliver mail to the neighbor's address. Chris Runkel, the neighbor's child, did not believe Joe was dangerous but admitted that the dog would bite strangers. After the May 1997 incident, Chris Runkel testified that the family normally tied up the dog during the day unless someone was around to watch the dog but let the dog roam loose at night.
On January 3, 1998, Chris Runkel and another child, Tim Fleming, were playing with radio-controlled toy cars near the Fisher residence. From a hand-drawn map, admitted into evidence at trial, it appears that the Fisher residence lies parallel to Plazier Road at a point where it ends in a "T" intersection with South Bloomfield-Royalton Road. Plazier Road runs north to south. From photographs admitted into evidence at trial, it appears that the house lies downhill from both Plazier Road and South Bloomfield-Royalton Rd. There is a porch on the front (northeast) corner of the house, on the side away from the road intersection, some one hundred twenty feet west of Plazier Road. The driveway to the house is on this north side of the house, away from the intersection. The two boys were at the intersection of the two roads, approximately two hundred feet southeast of appellant's house.
Appellant's son, Chris Fisher, had just left the house and was walking up the driveway away from the house. Appellant's other children were near the house and driveway playing with appellant's dogs. Appellant was in the house, while her husband was behind the house taking down Christmas lights.
The testimony varies as to what happened next, although there is a consensus that Joe ran downhill toward appellant's children and dogs. Appellant shot once from the porch of the house with a .357 Magnum pistol, hitting the ground near Joe. At that point, the dog ran away, as did Chris Runkel and Tim Fleming. Three months later, appellant was charged with menacing, a violation of R.C. 2903.22, a fourth degree misdemeanor, as the result of a complaint filed by Chris Runkel's mother.
 OPINION We begin our analysis with a review of the menacing statute, R.C. 2903.22:
 No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of such other person, such other person's unborn, or a member of the other person's immediate family.
"Knowingly" is defined at R.C. 2901.22 (B):
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will cause a certain result or will probably be of a certain nature. A person has knowledge of the circumstances when he is aware that such circumstances probably exist.
Here the State charged appellant with menacing Chris Runkel. Appellant, in her Second Assignment of Error, argues that the court erred in finding that a violation of R.C. 2903.22 occurred when she discharged the firearm and caused the boy to be fearful. Appellant argues that to find her guilty of menacing, it is also necessary to demonstrate that she intended a threat to the child.
While it is not in dispute that the two boys were near each other at the time of this incident, the testimony at trial conflicts as to just how close Chris Runkel and Tim Fleming were to the dog at the time appellant fired her single shot. Chris and Tim believed they were about fifteen to twenty feet from where the bullet hit the ground. Appellant's husband, Jay Fisher, believes the boys were further away than that, near South Bloomfield-Royalton Road. From where he was behind the house, he could see the two boys. He could not have seen the yard in front of the house or Joe from his location, as the house blocked his view. Deputy Sheriff Timothy Carpenter found a mark on the ground about sixty feet directly in front of the porch, where appellant claimed the bullet struck.
The alleged victim, Chris Runkel, testified that he heard the gunshot, looked up and saw appellant on the porch, thought she was firing at him, got his dogs from the appellant's yard, and went home. The boy with Chris Runkel, Tim Fleming, testified that he was afraid because there was a gun shot, and that he just got scared because there had been a gunshot. Tim testified that he did not know whether the appellant intended the shot to warn the dog or "get the dog."
Appellant's Second Assignment of Error questions the interpretation of the statute by the trial court in determining if the prosecution established the necessary elements of this crime. In other words, appellant's Second Assignment of Error questions the sufficiency of the evidence used to convict her.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
We find the evidence submitted by the prosecution in the case at bar to be legally insufficient to support a conviction for menacing. An essential element of this crime is the complainant's belief that the offender intends harm to the complainant's person or property. It is not enough to demonstrate that the accused made threats, if it is apparent that the complainant did not take the threat seriously. See State v. Denis (1996), 112 Ohio App.3d 397,678 N.E.2d 996; State v. Dechant (Dec. 19, 1985), Montgomery App. No. 9406, unreported.
In Denis, the complainant testified that he laughed off a threat by the accused, as the accused had made other threats, and the complainant did not believe the accused was capable of carrying out his threat. In Dechant, defendant was arguing with the complainant in a grocery store when the defendant threatened the complainant. The complainant simply walked away from the defendant, and defendant took no further action. Both courts reversed the convictions for menacing because the State failed to establish that the complainants felt threatened by the defendants' actions.
In the case at bar, the State has failed to establish that any threats were made to the complainant or her child, Chris Runkel, prior to the January 3, 1998 incident. Both boys testified that the appellant was shouting, but there is nothing in the record to indicate appellant threatened either boy at the time of the incident.
It is not necessary to demonstrate that the accused verbally threatened the complainant's child, if the trier of fact may infer from the history between the parties that the accused intended a threat by his actions. In State v. Boyle (Mar. 8 1996), Portage App. No. 95-P-0037, unreported, the accused drove his car toward the complainant, who was walking along the side of the road, causing the complainant to jump into a ditch. No words were exchanged at the scene of this incident, but the prosecution established a history of problems between two neighbors, providing enough evidence to sustain the inference that the accused intended to threaten the complainant with his car.
In the case below, there was no evidence submitted by the prosecution that would indicate any history of a dispute between the Fishers and the Runkels. The defense established a pattern of "menacing" behavior by Joe. However, absent specific evidence of prior threats submitted by the prosecution, this alone is not enough to infer that the appellant intended the shot as a threat to Chris Runkel, the dog's owner. Instead, the testimony submitted by both the State and the appellant supports the opposite inference, that appellant intended to scare off the attacking dog.
The evidence must demonstrate that the accused directed the threats towards the complainant. In Re Paskins (Aug. 3, 1998), Fairfield App. No. 97-CA-70, unreported, demonstrates this point. There, the complainant, Gamble, charged defendant Paskins with two incidents of menacing. In the first incident, Gamble was driving a car with Paskins and several other juveniles in the back seat. While Gamble testified that he felt intimidated by threats directed towards him, his testimony did not establish that Paskins made any of the threats. In the second incident, Paskins and Paskins' brother yelled at Gamble and kicked his car door. Gamble could not hear what they were saying and drove away but not before Paskins kicked in his car door. The court concluded that the evidence submitted at trial was not legally sufficient to support the first count, since the testimony did not establish any threat directed at Gamble by Paskins. However, they sustained the conviction on the second count because the trial court could reasonably infer that Paskins intended to threaten Gamble by his actions, even if Gamble could not understand Paskins' words.
The testimony in the case at bar does not clearly establish that the complainant's child was threatened. While Chris Runkle's testimony indicates that he thought appellant was shooting at him, his reaction to the shot was to simply call the dogs and go home. On the other hand, Tim Fleming, who was right beside Chris at the time of the shot, testified that he thought the appellant intended to scare off or kill the dog.
The missing element in the case below is any evidence that the appellant intended to threaten the complainant. By the language of the statute, a threat could be inferred by the shot directed at Joe, the property of Chris Runkel.
Appellant asserts a privilege in shooting at the dog based on R.C. 955.28 (A). The State argues that the privilege did not exist under the statute because they claim Joe threatened appellant's dogs, not her children. Whether or not appellant's belief in her privilege was well founded is an issue better resolved by a judge or jury in a civil proceeding. See Penny v.Fourman (Nov. 6, 1998), Darke App. No. 98-CA1465, unreported.
However, appellant's evidence established that she had good reason to regard Joe as an aggressive and probably dangerous animal. Whether her response to the threat posed by Joe the dog was properly met with a shot from a .357 Magnum, or whether her response was unjustified, perhaps reckless, was not at issue.
The State did not charge appellant with criminally reckless behavior. The State charged that appellant "knowingly" threatened the complainant's family member, Chris Runkel. The State failed to submit sufficient evidence to establish this element of the crime. We hold, therefore, the evidence submitted at trial was insufficient to support the conviction for menacing.
The judgment of the trial court is REVERSED and the appellant is ordered discharged. Our decision renders it unnecessary that we address appellant's remaining two assignments of error, and we decline to do so. App.R. 12 (A).
 JUDGMENT REVERSED
 JUDGMENT ENTRY
It is ordered that the judgment be reversed, the appellant discharged, and that the appellant recover of the appellee costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Circleville Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Only.
Abele, J.: Dissents with Dissenting Opinion.
For the Court
 By: _______________________ David T. Evans, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.